UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEARHAMEL JORDAN FANARO,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CONTRA COSTA, et al.,<br><br>Defendants. | Case No. 3:19-cv-03247-WHO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTIONS TO STRIKE**<br><br>Re: Dkt. Nos. 12, 23, 28 |

Plaintiff Jearhamel Fanaro seeks to hold the County of Contra Costa, the Contra Costa County Sheriff's Office, Sheriff David O. Livingston, and various other individuals responsible for an attack that allegedly took place while he was incarcerated in the County's Martinez Detention Facility. Fanaro alleges that five inmates brutally attacked him, that four Doe deputies of the Contra Costa County Sheriff's Office took steps that enabled the attack to happen, and that the County and Sheriff have acted and failed to act in ways that caused his attack. Before me is a motion to dismiss by the County, the Sheriff's Office, and Livingston ("the County defendants"), along with Fanaro's motion to strike the answer of Thomas Leon, one of his alleged inmate attackers. For the reasons set forth below, I will GRANT IN PART defendants' motion to dismiss but grant Fanaro leave to amend some claims, and I will DENY Fanaro's motion to strike.

## BACKGROUND

Fanaro is a Filipino-American who was a convicted inmate at the Martinez Detention Facility between May 8 and August 17, 2018. Complaint ("Compl.") [Dkt. No. 1] ¶ 6. The Martinez Detention Facility is a maximum-security jail and serves as the point of intake for arrestees booked in Contra Costa County. *Id.* ¶ 22. Fanaro's allegations stem from a series of events that took place on May 15, 2018, when he was brutally attacked by five fellow inmates.

According to the complaint, the County divides the Martinez Facility into modules and assigns inmates to a particular module based on various criteria, including gang affiliation. Compl. ¶ 23. Fanaro was housed on A Module, which is the gang unit. *Id.* ¶ 24. Some of the inmates housed in the A Module are members of Norteño, "a violent criminal organization whose primary activities include murder, attempted murder, and violent assaults." *Id.* ¶ 25. If an inmate wishes to withdraw from the gang and be moved to a different housing module, he must participate in an interview with County staff and share everything he knows about the gang. *Id.* ¶ 27. The County Sheriff's Office collects information about the gang in various ways, and it trains employees on how to recognize signs that an individual is in a gang, including the Norteño gang. *Id.* ¶¶ 26, 28.

Fanaro alleges that the Sheriff's office "supports the power structure within the gang" in various ways. *Id.* ¶¶ 29-31. It houses the gang leaders, or "shot callers," in the same cell, which "allows gang activities to flourish." *Id.* ¶ 29. It allows gang "ambassadors" to haze new inmates in A Module by escorting them "orient[ing] [them] to the gang's policies and procedures within the Module." *Id.* ¶ 30. The hazing involves a denial of certain privileges, like television and commissary shoes, during a "freeze" period that can last up to several weeks. *Id.* ¶ 30. Deputies also allow gang members to respond when inmates push call buttons inside their cells. *Id.* ¶¶ 34-35. These buttons are used when there is a medical emergency or when an inmate wants to debrief about exiting from a gang. *Id.*

According to the complaint, Martinez jail is insufficiently staffed, with a ratio of 25 inmates to 2 deputies when inmates are out of their cells during free time. *Id.* ¶ 32. Fanaro asserts that the County defendants have received complaints from employees about such insufficient staffing. *Id.* Employees of the mail have also complained that the camera in the courtyard of Module A does not rotate and has large blind spots. *Id.* The County has denied four Public Records Act requests from Fanaro seeking information on these problems. *Id.* ¶ 63.

When Fanaro arrived at the Martinez jail on May 8, 2018, the Doe deputies "knowingly handed [him over] to two Norteño ranking members with intention of subjecting him to a 'freeze.'" *Id.* ¶ 33. Fanaro pushed the call button in his cell in order to inform the deputy Does

2

that he wished to withdraw from the gang, but Norteños entered his cell rather than the deputies. *Id.* ¶¶ 36-38. When the Norteños asked why Fanaro had pushed the call button, he said that he was sick. *Id.* ¶ 38. The Norteños turned off the call button, and no deputies never followed up with Fanaro about it; instead Norteño members began escorting him at all times. *Id.* ¶¶ 39-40. As a result, Fanaro "never had the chance to explicitly inform [Livingston] of his intention to withdraw." *Id.* ¶ 40.

On May 15, 2018, defendant inmate Leon gave Fanaro a pair of shoes, "falsely signaling the end of the 'freeze.'" *Id.* ¶ 43. Norteño members then lured Fanaro to an area of the courtyard located in the camera's blind spot in order to attack him. *Id.* ¶¶ 43-45. Inmates Leon, Francisco Ramirez, and Francisco Vargas then attacked Fanaro. *Id.* ¶ 46. When Fanaro attempted to get up and walk back inside, Leon, Ramirez, and Vargas attacked him again, this time with the help of two Doe inmates. *Id.* ¶¶ 46-47. In total, the attack was between 15 and 25 minutes long, and it left a 10' by 6' blood stain on the ground. *Id.* ¶ 48.

The deputy defendants allegedly facilitated and endorsed the attack in several ways. Their training and experience should have allowed them to discern that Norteño members were planning an attack on Fanaro. *Id.* ¶ 41. But they did nothing to prevent the attack because they treated Fanaro, a Filipino American, more poorly than Latino inmates. *Id.* ¶ 42. The attack occurred in a blind spot in the courtyard camera, meaning that the deputies in the control center did not see it and "were unable to send additional sheriff's deputies to intervene." *Id.* ¶ 50. The attackers were aware of the camera's blind spot because of information they received from the deputies. *Id.* Deputies failed to perform security rounds on the roof, where they would have seen the attack taking place. *Id.* ¶ 45. Fanaro's assailants should have returned to their cells when free time ended, but the Doe deputies allowed them to remain in the courtyard and continue the attack. *Id.* ¶ 48.

According to the complaint, several facts show the deputies were aware the attack was occurring. Norteño members "signaled Defendants Does 1 to 2 by their words, by making eye contact with them, and by openly guarding [Fanaro]." *Id.* ¶ 52. The deputies could see the other inmates watching the attack. *Id.* In addition, they could hear Fanaro's screams, cries, and grunts.

3

*Id.* They also served as lookouts for the attackers themselves. *Id.* After the attack ended, Fanaro went inside and asked deputies for help, at which point he was transported to John Muir Medical Center. *Id.* ¶ 54. Fanaro's injuries included several broken bones. *Id.* ¶ 55.

Fanaro allege that the County, the Sheriff's Office, and Livingston knew that their employees were inadequately trained, supervised, or disciplined.[1] *Id.* ¶ 59. They knew there was a group of deputies at the Martinez jail who "conspired with the inmates to permit them to 'control' A Module," and yet the County actors allowed them to continue their work, thus putting Fanaro and other inmates in harm's way. *Id.* ¶ 61. The County actors were aware of the limited camera views and insufficient staffing and yet failed to act, which allowed the inmates to exploit the gaps in security.[2] *Id.* ¶ 62. Specifically, Livingston is aware from reports and briefings he has received in various forms. *Id.* ¶ 66. Despite an "epidemic of violent attacks," there has been no discipline. *Id.* ¶ 64. Fanaro makes these allegations on information and belief because without discovery, "access to the existence or absence of internal policies[,] customs, or practices . . . is necessarily limited." *Id.* ¶ 67.

Fanaro filed this case on June 10, 2019. Defendant Leon answered on August 1, 2019. Leon Answer [Dkt. No. 9]. The County, the Sheriff's Office, and Livingston moved to dismiss on August 13, 2019 and then refiled their motion on August 16 after the case was reassigned to me. Motion to Dismiss ("MTD") [Dkt. No. 16]. On August 22, Fanaro moved to strike Leon's Answer. Motion to Strike ("MTS") [Dkt. No. 23].[3] I heard argument on September 25, 2019, and on October 8, 2019, Fanaro filed a first amended complaint naming two of the Doe deputies. Dkt. No. 33.

---

[1] They "maintained policies, customs, or practices deliberately indifferent to or acquiescing to, or failed to maintain polices, customs, or practices when it was obvious they were needed to prevent the negligence and lack of protection of the inmates at the Martinez Detention Facility. The presence of these policies, customs, or practices is confirmed by and consistent with the negligence and lack of protection of JEARHAMEL FANARO by Defendants DOES 1 and 2." Compl. ¶ 60.

[2] Fanaro alleges that the County has failed to produce documents related to its policies, customers, or practices despite his California Public Records Act request. *Id.* ¶ 63.

[3] On September 9, Fanaro moved to strike the County defendants' Reply because it was filed one day late. Motion to Strike Reply [Dkt. No. 28]. That motion is DENIED.

**LEGAL STANDARD**

I. **MOTION TO DISMISS**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

II. **MOTION TO STRIKE**

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation and alteration omitted). Motions to strike "are generally disfavored [by courts] because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the

merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (citation omitted). Such motions should only be granted if "the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit." *New York City Employees' Ret. Sys. v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal. 2009). "Where the moving party cannot adequately demonstrate such prejudice, courts frequently deny motions to strike even though the offending matter literally was within one or more of the categories set forth in Rule 12(f)." *Id.* (citation and quotation marks omitted).

In resolving a motion to strike, the pleadings must be viewed in the light most favorable to the nonmoving party. *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12-CV-00846-LHK, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone*, 618 F.3d at 973).

## DISCUSSION

### I. THE COUNTY, THE SHERIFF'S OFFICE, AND LIVINGSTON'S MTD

Fanaro brings a total of fifteen claims against the various defendants in this case. The County, the Sheriff's Office, and Livingston move to dismiss all nine of the claims against them, four of which are state law claims and five of which are federal law claims under 42 U.S.C. Section 1983.

#### A. Section 1983 Claims

Fanaro brings five Section 1983 claims against the County, the Sheriff's Office, and Livingston.

##### 1. *Monell* Liability

Local governments "can be sued directly under [section] 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). Fanaro must plausibly plead the following elements to proceed with his *Monell* claims: "(1) that [he] possessed a constitutional right of which he was deprived; (2) that the municipality had a

policy, custom or practice; (3) that the policy, custom or practice amounted to deliberate indifference to [his] constitutional rights; and (4) that the policy, custom or practice was the moving force behind the constitutional violation." *Torres v. Saba*, No. 17-CV-06587-SI, 2019 WL 111039, at *6 (N.D. Cal. Jan. 4, 2019).[4] "There are three ways to show a policy or custom of a municipality: (1) by showing a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks omitted).

Liability can be premised on policies of action or inaction: "A policy of action is one in which the government body itself violates someone's constitutional rights, or instructs its employees to do so; a policy of inaction is based on a government body's failure to implement procedural safeguards to prevent constitutional violations." *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (internal quotation marks omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency[,] and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). "[T]he inadequacy of police training may serve as the basis for [section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

The County defendants assert that Fanaro's complaint fails to allege sufficient facts and that many of the facts it does allege contradict his contention that a County policy or practice

---

[4] Fanaro criticizes defendants for citing district court cases that have not been published in the official reporter. The rule Fanaro cites applies to cases that are listed "not for citation." *See* Civ. L.R. 3-4(e). As long as they do not bear this warning, district court cases published through Westlaw and Lexis are certainly citable.

7

resulted in his injury. Mot. 8-13. In Opposition, Fanaro critiques the County defendants for setting the bar too high for the pleading stage and writes that he "has alleged the factual allegations in his complaint in as much detail known to him under information and belief." Oppo. 10.

Fanaro makes the following allegations of a policy or a practice attributable to Contra Costa County:

> The Sheriff's Office classification unit determines housing assignments for inmates based on interviews in which inmates are asked about their race and gang affiliation. Compl. ¶ 23.
> The Sheriff's Office collects information on gangs through observation, classification and debrief interviews, phone calls and mail monitoring, incident reports review, and searches. *Id.* ¶ 26.
> The Sheriff's Office trains employees on how to recognize gang symbols and behavior. *Id.* ¶ 28.
> The Sheriff's Office supports the gang by housing gang shot callers together, allowing gang ambassadors to escort new inmates and control their access to commissary shoes and television time, informing gang members of security gaps, allowing gang members to have contraband, not intervening in conflicts, covering up gang activity, and allowing gang members to respond to inmate call buttons. *Id.* ¶¶ 29-31, 35.
> Livingston knew deputies allowed inmates to control A Module. *Id.* ¶ 61. The County, the Sheriff's Office, and Livingston knew that there was violent gang behavior that put inmates at risk and yet failed to act. *Id.* ¶ 65.
> The County inadequately trains deputies "to handle usual and [recurring] situations, like fights between inmates" and that this failure caused his injuries. *Id.* ¶¶ 87-88.
> The Sheriff's Office has received complaints about insufficient staffing in A Module and blind spots in the courtyard cameras and yet failed to fix the problems. *Id.* ¶¶ 32, 62.
> The Sheriff's Office has a policy to patrol the roof area to monitor inmate activity in the courtyards. *Id.* ¶ 45.
> The County, the Sheriff's Office, and Livingston "knew the employees were inadequately trained, supervised, or disciplined resulting from their inadequate policies, customs, or practices . . . ." *Id.* ¶ 59.

These allegations are sufficient at the pleading stage. For the policy-or-practice theory, Fanaro adequately alleges that the County defendants classify inmates based on gang membership and allow gang members to run the pods and to put new inmates through a violent hazing process. Further, they have been on notice of understaffing and camera blind spots and yet have failed to correct these problems. Fanaro alleges that these policies and practices caused his attack and allowed it to continue uninterrupted. For the failure to train theory, Fanaro alleges that the County

8

defendants train deputies on to recognize gang behavior and symbols but that their training is inadequate when it comes to preventing inmate-on-inmate violence. These allegations are sufficient to allow Fanaro to proceed to discovery.[5]

Further, I do not agree with the County defendants' assertion that the Sheriff's Office is not a proper defendant to a Section 1983 action. *See* MTD 19. Indeed, "the Ninth Circuit has permitted an action under § 1983 to proceed against a California sheriff's department notwithstanding the department's contention that it is not a 'person' within the meaning of § 1983." *Estate of Osuna v. Cty. of Stanislaus*, No. 18-cv-1240, 2019 WL 2598694, at *4 (E.D. Cal. June 25, 2019) (citing *Streit v. Cty. of Los Angeles*, 236 F.3d 552, 566 (9th Cir. 2001)).

Finally, the County defendants assert that the claims against Livingston in his individual capacity fail because they are conclusory and lack factual support. Supervisor liability can arise under Section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). The plaintiff must show that the supervisor's action or inaction was the proximate cause of the constitutional injury. *Id.* "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208.

The complaint sufficiently alleges claims against Livingston in his individual capacity. It is plausible that he knew or should have known about his employees' conduct in allowing the gang to run the pod, and Fanaro adequately alleges that his inaction caused the injuries. For all of these reasons, the motion to dismiss the *Monell* claims is DENIED.

**2. Fourteenth Amendment**

Fanaro's first and fifth claims allege violations of the Fourteenth Amendment for failure to protect him from the attack by other inmates. The County defendants move to dismiss these

---

[5] Fanaro also alleged that the County failed to respond to four Public Records Act requests seeking additional evidence on these issues.

9

claims because Fanaro can only proceed under the Eighth Amendment. MTD 5. "Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016). Fanaro admits in his complaint that he was a "convicted" inmate. Compl. ¶ 6.

In his Opposition, Fanaro argues only that his claims under the Fourteenth Amendment's Equal Protection Clause are not barred. Oppo. 5-6. His complaint alleges that Nortenõs are predominantly Latino, while Fanaro is Filipino. *Id.* at 6. But it makes no mention of an Equal Protection violation, and the allegations about race are threadbare. To state a claim on amendment, Fanaro will have to present plausible allegations that the County defendants "acted in a discriminatory manner and that the discrimination was intentional." *See Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948 (9th Cir. 2003) (internal quotation mars and citation omitted) (overruled on other grounds).

Plaintiffs' Fourteenth Amendment claims are DISMISSED WITH LEAVE TO AMEND.

**B.     Injunctive Relief**

Fanaro seeks injunctive relief, namely an order enjoining the County defendants and Doe deputies from "continuing or repeating the policies, customs, or practices complained to herein." Compl. Prayer for Relief ¶ 5. The County defendants contend that he lacks standing to pursue injunctive relief because according to the complaint, he was released from County jail in August 2018. MTD 18.

Fanaro can only pursue an injunction as a remedy if he can establish a "likelihood of substantial and immediate irreparable injury" so as to satisfy Article III standing requirements. *See O'Shea v. Littleton*, 414 U.S. 488, 502 (1974). The alleged injury cannot be "conjectural," "hypothetical," or "speculative." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 111 (1983) (determining the plaintiff lacked standing where he failed to show the real and immediate threat that he would again be subject to a chokehold during a traffic stop).

Fanaro's complaint clearly pleads that he has been released from custody, and it does not allege any facts showing that he is likely to return to County jail. *See* Compl. ¶ 6. In his

10

Opposition, Fanaro requests leave to amend his complaint to add allegations that his "past criminal history and chosen lifestyle"—namely, his affiliation with a gang—establish a credible threat that he will again be incarcerated and assigned to a gang module. Oppo. 19-20. These speculative allegations would not be sufficient to establish a likelihood of immediate irreparable injury.[6] *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (finding a credible threat where the plaintiff "ha[d] been stopped on approximately 15 occasions . . . in a period of less than two years").

The new facts Fanaro alleges in his Opposition remain insufficient to establish Article III standing to seek injunctive relief; accordingly, amendment would be futile. The claims for injunctive relief against the County are DISMISSED WITH PREJUDICE.

### C. State Law Claims – Sixth, Seventh, Eighth and Ninth Causes of Action

Fanaro brings claims for failure to protect, for racial discrimination under California's Unruh Civil Rights Act, for state-created danger, and for negligence against the County defendants.

#### 1. Immunity

The County and the Sheriff's Office first argue that the state law claims against them should be dismissed with prejudice because they are immune from suit under California law. MTD 4-5.

Under California Government Code section 844.6(a)(2), a public entity is not liable for injuries proximately caused by a prisoner or any injury to a prisoner. Cal. Gov't Code § 844.6(a); *Cook v. Cty. of Contra Costa*, No. 15-CV-05099-TEH, 2015 WL 9204292, at *2 (N.D. Cal. Dec. 17, 2015) ("[P]ursuant to California Government Code section 844.6(a)(2), a public entity is immune from a prisoner's claim for injuries arising from negligence or a dangerous condition of public property."). "Prisoner" includes a pretrial detainee. *Velarde v. Cty. of Alameda*, No. 15-cv-03323-SI, 2016 U.S. Dist. LEXIS 53110, at *27 (N.D. Cal. Apr. 20, 2016). The complaint clearly pleads that Fanaro was a prisoner at the time the attack took place. Compl. ¶ 6.

In Opposition, Fanaro argues that he wishes to pursue non-monetary relief under the

---

[6] Fanaro does not allege that he has returned to County jail over the past year since his release, and he makes no allegations about a history of incarceration prior to May 2018.

11

claims. Oppo. 5; *see* CAL. GOV'T. CODE § 814 ("[N]othing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."). The complaint seeks only compensatory and punitive damages.[7] Compl. ¶ 117. As discussed above, Fanaro lacks standing to pursue injunctive relief. *See supra* Section I.B – Injunctive Relief. When asked at the hearing, Fanaro did not name any nonmonetary relief other than injunctive relief that he wishes to pursue.

Fanaro's sixth, seventh, eighth, and ninth causes of action are DISMISSED WITH PREJUDICE as to the County and the Sheriff's Office.[8] Accordingly, I will address the remaining arguments about the adequacy of the state law claims only as they relate to Livingston.

### 2. Government Tort Claim and Adequacy of Allegations

The County defendants further challenge Fanaro's state law claims on the ground that his government tort claim did not adequately raise them. MTD 6-7, 16-17. The County defendants request judicial notice of Fanaro's government tort claim, which Fanaro references in his complaint. *See* Defendants' Request for Judicial Notice ("Gov't Claim") [Dkt. Nos. 17, 17-1]; Compl. ¶ 4 ("Plaintiff JEARHAMEL FANARO filed a government claim with the COUNTY OF CONTRA COSTA regarding the claims asserted herein, on May 15, 2018."). That request is GRANTED over Fanaro's objection.[9]

---

[7] The County defendants cite cases in which courts have rejected attempts to "plead around governmental immunity statutes by tacking on a request for injunctive or [declaratory] relief in an action for tort damages." Reply 2. It is not necessary for me to address this argument because Fanaro lacks standing to pursue injunctive relief.

[8] The claims fall under the following provisions: Cal. Gov. Code §§ 815.2(a) and 820(a) (sixth), Cal. Civ. Code § 51 (seventh), Art. I, § 7 of the California Constitution and Cal. Gov. Code §§ 815.2(a) and 820(a) (eighth), and Cal Gov. Code § 820(a) (ninth).

[9] Courts may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a). Courts have taken judicial notice of government tort claims when they were referenced in the complaint but not attached to it. *Ramachandran v. City of Los Altos*, 359 F. Supp. 3d 801, 812 (N.D. Cal. 2019). Fanaro opposes the request with explanation and without raising any disputes over the authenticity of the document submitted. *See* Oppo. 4 n.1 ("For the Record, Plaintiff opposes Defendant's request that this Court take judicial notice of Plaintiff's Government Tort Claim Act."). Judicial notice is appropriate because the document is referenced in the complaint and there are no doubts about its authenticity.

Before bringing a suit for money or damages against a public entity or employee, an individual must present those claims to the entity itself. Cal. Gov't Code § 911.2. "If a plaintiff relies on more than one theory of recovery against the State, each cause of action must have been reflected in a timely claim. In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint." *Nelson v. State of California*, 139 Cal. App. 3d 72, 79 (Ct. App. 1982) (citations omitted). A suit may proceed despite a defective form as long as there was substantial compliance, meaning that the claim provided the public entity sufficient information to reasonably enable it to investigate the merits and decide whether to settle. *White v. Moreno Valley Unified Sch. Dist.*, 181 Cal. App. 3d 1024, 1031 (1986). "A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an entirely different set of facts. Only where there has been a complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim, have courts generally found the complaint barred." *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004) (internal quotation marks and citations omitted).

Fanaro's government tort claim presents the same factual scenario as the one detailed in the complaint, namely that he was housed in the gang unit, gang members came to his cell when he pushed the call button, and gang members beat him up in the courtyard for about 25 minutes. *See* Gov't Claim 1-2. It asserts that the deputies on duty "failed to perform their obligations" and "endangered [his] safety and allowed him to be attacked for an extensive period of time without intervening." *Id.*

Livingston challenges the sufficiency of the tort claim on the grounds that it does not mention him or anyone in a supervisory role. MTD 16-17. According to Fanaro, the negligence allegations in his government tort claim encompass claims against Livingston for negligent failure to supervise or train. Oppo. 9. But the claim makes no mention of any individuals involved in his injuries other than the four unknown deputies. Under state law, Livingston can only be liable if he had a personal role in the events in question. *See Mitchell v. City of Rohnert Park*, No. C 09-03076 WHA, 2010 WL 583948, at *3 (N.D. Cal. Feb. 16, 2010) ("Under California law, the chief

of a municipal police department is not responsible for the acts of members of the force, unless he directed such acts to be done, or personally cooperated in the offense."); *Nicholson v. City of Bakersfield*, No. 1:08-CV-1168, 2011 WL 13240300, at *18 (E.D. Cal. Dec. 20, 2011) ("Thus, a public employee supervisor may be liable for the acts of a subordinate if that supervisor directs the subordinate to perform a wrongful act."). Accordingly, when Fanaro made allegations against Livingston in the complaint, it represented a "complete shift in allegations" against an entirely new person.

The complaint hardly mentions Livingston; it certainly does not adequately allege that he directed or cooperated in the events giving rise to Fanaro's injuries.[10] In any event, amendment would be futile because the tort claim failed to give fair notice of the claims against Livingston. The state law claims against him are DISMISSED WITH PREJUDICE.[11]

## II. MOTION TO STRIKE LEON'S ANSWER

Fanaro moves to dismiss the answer filed by Leon, one of his alleged attackers and an inmate at Pelican Bay State Prison. Fanaro challenges the Answer for its failure to follow the pleading requirements and because the affirmative defenses allegedly lack a factual basis. He also critiques specific paragraphs of the Answer. Leon is unrepresented. It is difficult to imagine what striking the Answer would accomplish. Instead, Fanaro should pursue other means of discovery to obtain the information he needs to understand Leon's defense. The motion is DENIED.

## CONCLUSION

The County defendants' motion to dismiss is GRANTED IN PART. The state law claims against them are DISMISSED WITH PREJUDICE. The motion to dismiss the *Monell* claim is DENIED. The motion to dismiss the Fourteenth Amendment claims is GRANTED WITH

---

[10] Fanaro fails to address the sufficiency of the allegations in his Opposition.

[11] Because I dismiss the claims on other grounds, I do not address the County defendants' arguments that (i) the seventh claim fails because the tort claim did not mention race, and (ii) the sixth and eighth claims should be dismissed to the extent they improperly seek monetary damages. *See* MTD 6-7, 18.

14

LEAVE TO AMEND.  Fanaro's amended complaint is due on or by **October 30, 2019**.

**IT IS SO ORDERED.**

Dated: October 15, 2019



William H. Orrick
United States District Judge