UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEARHAMEL JORDAN FANARO,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CONTRA COSTA, et al.,<br><br>Defendants. | Case No. 3:19-cv-03247-WHO<br><br>**ORDER ON MOTIONS FOR SANCTIONS, VACATING HEARINGS**<br><br>Re: Dkt. Nos. 132, 134 |

## INTRODUCTION

Before me are two motions filed by plaintiff Jearhamel Fanaro that stem from attempted depositions of pro se defendants Francisco Vargas and Thomas Leon. Fanaro seeks sanctions against Leon and the California Department of Corrections and Rehabilitation ("CDCR") and to hold Vargas in contempt or for an order to show cause why he should not be sanctioned. These motions are appropriate for decision without oral argument; the hearings on them are VACATED. *See* Civ. L.R. 7-1(b).

Vargas is ORDERED TO SHOW CAUSE by April 19, 2021 why he should not be sanctioned for failing to appear at his deposition. If he does not respond, he will face monetary and evidentiary sanctions and may be prohibited from presenting evidence in support of his case at trial. The portion of this Order about him below provides more guidance.

I will not sanction CDCR or Leon, but I will facilitate Fanaro's discovery attempts. In his deposition, Leon invoked his Fifth Amendment privilege against self-incrimination to avoid responding to any questions. Before Fanaro's counsel could ask all of her questions, the deposition was cut short. For Fanaro to use Leon's invocation of the privilege against him at trial, it must be asserted on a question-by-question basis. Accordingly, Fanaro shall submit all questions he sought to ask Leon in a written list. Leon is then ORDERED to respond by stating

whether he invokes his Fifth Amendment privilege in answer to all questions, as he repeatedly said at the deposition. Leon is permitted to invoke his Fifth Amendment privilege in answer to some questions, but he cannot use his withheld testimony at trial. If Leon invokes the Fifth Amendment in response to all questions, he may not testify in his defense at trial and Fanaro may use his silence against him. If Leon does not respond, I will understand him to invoke the privilege in response to all questions and the same consequences will occur. The portion of this Order about him below provides more guidance.

I remind Vargas and Leon that there are resources for pro se litigants available on the Court's website at https://www.cand.uscourts.gov/pro-se-litigants/.

## BACKGROUND

This suit is based on Fanaro's allegation that, while he was held at the Martinez Detention Facility ("MDF"), he was assaulted by other inmates and that officials of MDF and Contra Costa County violated his constitutional rights by failing to prevent and/or effectively permitting the assault. Vargas and Leon are alleged to have participated in the assault. Third Amended Complaint [Dkt. No. 94] ¶ 50. Both represent themselves pro se.

## I.     VARGAS'S ATTEMPTED DEPOSITION

Fanaro noticed a deposition of Vargas to be held on October 27, 2020. Motion to Hold Francisco Vargas in Contempt ("Vargas Mot.") [Dkt. No. 134] at 20.[1] A licensed private investigator served a subpoena for Vargas to appear at that deposition and a check for his costs on Vargas's mother at Vargas's residence. *See id.* at 23, 24, 28. According to that investigator's sworn declaration, Vargas called him on October 13 and said that he did not want to attend the deposition in person but would attend via remote video. *Id.* at 28. The investigator reached out to him again that day to get Vargas's email address to set up the deposition, but Vargas did not respond or contact him again. *Id.* He cashed the check the next day. *Id.* He also did not respond to the investigator a week later. *Id.* On October 27, Vargas did not appear for his deposition, despite counsel's attempts to contact him that day. *Id.* at 26.

---

[1] Citations are to documents' ECF-generated page number.

2

## II. LEON'S DEPOSITION

Leon is currently confined in Pelican Bay State Prison ("Pelican Bay"), a facility administered by the CDCR. Because Leon is in custody, Fanaro moved for an order giving leave to depose him under Federal Rule of Civil Procedure ("FRCP") 30(a)(2)(B). Dkt. No. 92. No party opposed the motion and Pelican Bay indicated that it could facilitate the deposition. Accordingly, I granted leave. Dkt. No. 110. Because Pelican Bay could make Leon available—the pandemic had previously rendered depositions difficult—I ordered it to do so for a virtual seven-hour deposition and ordered Leon "to participate in the deposition to the extent required by law." *Id.* The virtual deposition occurred on December 9, 2020. It was attended by counsel for various other defendants; Fanaro's counsel, Qiana Washington; and correctional officer and Pelican Bay litigation coordinator Joshua Rush.

What occurred at that deposition is disputed in some respects. As a general matter, Leon asserted his Fifth Amendment privilege against self-incrimination in response to every question asked by Washington. *See, e.g.*, Motion for Sanctions Against CDCR and Thomas Leon ("Leon Mot.") [Dkt. No. 132] at 18:21–19:1; 20:6–9. Washington attempted to get Leon to answer; he repeatedly "pled the Fifth." At several points in the deposition he also asked to be taken back to his cell because he would not cooperate. *Id.* at 23:14–15. At one point, the transcript shows that, in answer to a question, he said, "[f]uck." *Id.* at 24:18. In a sworn statement, Rush characterizes this expletive as being "yelled" while Leon "grew increasingly angry." Third Party CDCR's Opposition to Plaintiff's Motion for Sanctions ("Oppo.") [Dkt. No. 138] at 13 ¶ 5. Fanaro's Reply states (not supported by sworn declaration), that the word was said "under his breath." Reply in Support of Leon Mot. [Dkt. No. 143] at 9.

After roughly 45 minutes, Leon was removed from the deposition before it was over under circumstances that are disputed. I recount first what appears in the certified transcript. As noted, Leon responded to numerous questions by invoking the Fifth Amendment and asked several times to return to his cell. At one point, Leon once again stated he "ple[d] the Fifth," and Rush (the correctional officer) stated, "[i]f you want to go, tell us loudly, and we'll take you back." Leon Mot. at 33:6–7. The transcript reflects that this was not said in response to any request by Leon.

3

The transcript then states there is "Reporter clarification" and Rush said, "[o]h, I'm sorry" and "I was talking to my partner. This is Counselor Rush," as Leon said, "I would like to go." *Id.* at 8–12. There was another "Reporter clarification" and Rush said, "[i]t is okay." *Id.* at 13–14. Leon asked, "[e]xcuse me, CO, can I go?" and Rush replied "Yes. We'll take you back. We can't force him to stay, and we are not going to use force to keep him here. So at this time, we are going to terminate the deposition for the safety of our staff." *Id.* at 15–20.

After some cross-talk between Washington and Rush, Rush reiterated, "we are not going to use force to keep him here," and Washington replied "[n]o one is using any force. No one is asking you to use force. He is sitting –." *Id.* at 34:1–4. Rush interjected with, "I understand that, but we are going to take him back to his cell." *Id.* at 5–6. There was some discussion about whether Pelican Bay had spoken to the Attorney General's Office about the issue. Washington also stated, "[a]nd just for the record, we do have you on the record telling Mr. Leon to say he wants to go back to his cell. The court reporter –." *Id.* at 35:7–9. Rush and Leon interrupted with Leon saying, "I already asked," and Rush saying, "[h]e kept saying that." *Id.* at 10–12. Washington responded, "I heard you say it, and the court reporter heard you say it as well." *Id.* at 13–14. Leon was removed.

After his removal, Washington stated, "[o]kay. So I am going to make a statement for the record about what just happened. Obviously we have Mr. Rush on the record prompting the witness to, I guess, 'If you want to go, tell us loudly, and we'll take you back.' And then when the court reporter asked him to speak up, he falsely claimed that he was talking to his partner." *Id.* at 36:8–15. She also said, "[n]o one was asking him to use any kind of physical force although he kept claiming they can't physically force him. Nobody asked him to physically force him to do anything, but certainly he was required to sit and answer whatever questions that we posed to him." *Id.* at 16–25. She also asked if anyone else had something to add for the record, and all replied that they did not. *Id.* at 37:3–4.

In his sworn declaration, Rush connects the expletive with the removal. He states that he believed Leon was a "security threat because he could have taken out his anger on correctional officers." Oppo. at 13 ¶ 5. He says that, "to diffuse an increasing [sic] volatile situation and

4

otherwise respect Mr. Leon's [Fifth Amendment] rights . . . I asked Mr. Leon to clarify if he still wanted to return to his cell" and removed him when he said yes. *Id.*

**LEGAL STANDARD**

FRCP 37 provides, "[t]he court where the action is pending may, on motion, order sanctions if . . . a party or a party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A). "Rule 37 explicitly authorizes the court to sanction parties for failing to attend their own depositions. No subpoena is needed. The only requirement is that the party be served with proper notice of the deposition beforehand." *Sali v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1222 (9th Cir. 2018) (internal quotation marks and citations omitted). FRCP 30(d)(2) provides, "[t]he court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of [a] deponent." *See also* Fed. R. Civ. P. 37(b).

**DISCUSSION**

Fanaro moves for sanctions against CDCR and Leon. CDCR responded; Leon did not. Fanaro also moves to hold Vargas in contempt or for an order to show cause why he should not be sanctioned for failing to appear. Vargas has not responded.

**I.  VARGAS**

Vargas is ORDERED TO SHOW CAUSE why he should not be held in contempt and/or sanctioned for failing to appear at his deposition. Parties must appear at depositions if they were properly served or they can be sanctioned. Fed. R. Civ. P. 37(d)(1)(A); *Sali*, 884 F.3d at 1222. Fanaro seeks the attorneys' fees and costs associated with preparing for the deposition that never occurred due to Vargas not appearing. **Vargas's response to this Order shall be submitted by April 19, 2021.**

Because Vargas is representing himself, I briefly describe what his response should include if he wishes to avoid sanctions. The evidence before me indicates that the subpoena was served to an adult member of Vargas's family at his residence and that he knew about the deposition because he made contact with the investigator about it. The evidence also shows he cashed the

5

check meant to reimburse him for expenses from attending. Despite this, Fanaro's counsel represents that Vargas never appeared. If Vargas disputes any of this, he should say so and present any evidence he has in support. Also, if Vargas has any justification for failing to appear, he should present it and supporting evidence of it. Vargas may satisfy this Order by contacting Fanaro's counsel and agreeing to sit for a deposition that occurs prior to April 19, 2021.[2]

If Vargas fails to respond to this Order, he will be sanctioned and required to pay Fanaro's attorney's fees and costs for preparing for the deposition. His failure to respond may also lead to an "evidentiary" sanction at trial; I may prohibit him from presenting evidence in his defense at trial. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii) (permitting evidentiary sanctions for failure to obey discovery orders); *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (holding that district courts have the inherent authority to exclude evidence as a sanction).

## II. LEON

I will not assess monetary sanctions against Leon. He appeared for his deposition; Rule 37 sanctions based on a failure to appear are inappropriate. Leon, moreover, is pro se and attempted to assert his privilege against self-incrimination under the Fifth Amendment. Lacking counsel, he likely was unaware of his obligation to respond to every question, whether or not he intended to assert his right against self-incrimination to every question. And he undoubtedly wanted to protect his constitutional right by his blanket assertion of the privilege, even though "in the civil context, the invocation of the privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution, or could lead to other evidence that could be used in that manner." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000); *see also id.* ("The only way the privilege can be asserted is on a question-by-question basis, and thus as to each question asked, the party has to decide whether or not to raise his Fifth Amendment right."). While some questions about the assault qualify under this test, other questions that Fanaro asked do not.

---

[2] If Fanaro paid any court reporter's fees as a result of his failure to appear, Vargas shall also be required to reimburse Fanaro for that amount.

6

In civil cases, there is an established consequence that comes from asserting the Fifth Amendment: an adverse inference at trial because of the failure to testify. *See S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998). **Leon should be aware that his refusal to give answers in his deposition means that he will not be able to give testimony in his defense at trial.** *See id.* In light of these circumstances, I will fashion a remedy to maximize fairness to both Leon and Fanaro. *Id.*

To cure the problem Leon created by leaving his deposition early, Fanaro may submit a list of written questions to Leon that he would have asked at the deposition. Leon is ORDERED to respond to this list by stating whether he is invoking the Fifth Amendment privilege in answer to all of them. If Leon is not invoking the Fifth Amendment privilege to all of them, he must sit for a new deposition and answer the questions he does not identify as requiring privileged responses. If Leon is invoking the privilege in response to all questions—as he said repeatedly during the deposition—he may not testify in his defense at trial. Fanaro may then propose the adverse inferences that I should consider on summary judgment and give to the jury at trial that are appropriate in light the invocation of his right against self-incrimination.

Fanaro shall serve the list of questions and this Order on Leon by April 19, 2021 (and post a notice on the docket saying that he has done so). **Leon must submit a response as I have explained here by May 14, 2021.** If Leon fails to respond, I will determine from that failure and his many statements during the deposition that he does indeed seek to invoke the Fifth Amendment in response to any and every question from Fanaro. If he does not respond, I will take appropriate inferences on summary judgment and he may not testify in his defense at trial; Fanaro can use his silence against him. *Colello*, 139 F.3d at 677.

No other sanctions are appropriate. Fanaro cites no authority for the proposition that Leon categorically waived the privilege by not responding to the motion for leave to depose. Leon Mot. 7–9. Leon is in prison and unrepresented. Invoking the privilege does not violate my order, despite what Washington repeatedly stated and implied during the deposition. *See, e.g.*, *id.* at 22:9 ("Well, it is the judge that is forcing you to talk."). My Order only required Leon to participate "to the extent required by law." Dkt. No. 110. Needless to say, court orders do not set aside

1   constitutional protections.

2         Indeed, Washington's conduct of the deposition raises its own concerns. Over the course
3   of 45 minutes, Washington continually pressured Leon to answer and stated or implied that he
4   could not lawfully invoke the Fifth Amendment. California Rule of Professional Conduct 4.3,
5   which governs communications by attorneys with unrepresented persons, provides in part, "In
6   communicating on behalf of a client with a person who is not represented by counsel, a lawyer
7   shall not seek to obtain privileged or other confidential information the lawyer knows or
8   reasonably should know the person may not reveal without violating a duty to another or which
9   the lawyer is not otherwise entitled to receive." Rule 4.3(b). Washington repeatedly told Leon he
10  had waived his Fifth Amendment rights by not responding to the motion for leave to depose, Leon
11  Mot. at 21:6, repeatedly told Leon my Order compelled him to answer regardless of the Fifth
12  Amendment, *id.* at 13:18, and repeatedly insinuated that the privilege could only be invoked in
13  criminal cases or interrogations, *id.* at 27:4–5, 28:15–16.

14        In sum, I will not award monetary sanctions. However, Fanaro was entitled to question
15  Leon and, if he responded by invoking the privilege, to use his silence against him in later
16  proceedings and at trial. The deposition was cut short. Fanaro may provide Leon with every
17  question he wants answered via the procedure described above. Leon must either sit for a second
18  deposition, if he has reconsidered his invocation of the Fifth Amendment, or declare that he asserts
19  his right against self-incrimination to all questions, in which case the appropriate inferences will
20  be drawn against him.

21  **III.    CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION**

22        I will not sanction CDCR. Fanaro's argument is that Rush "interfered with" the deposition
23  in violation of FRCP 30. On these facts, the conduct does not warrant sanctions. The deposition
24  lasted for roughly 45 minutes. During that time, Leon refused to answer any questions and made
25  it clear that he would not answer them in the future. It was Leon's decision, not CDCR's, to
26  improperly terminate the deposition. Some of CDCR's asserted justifications are not entirely
27  supported by the transcript (as just one example, Rush stated that he had been speaking to his
28  partner when he suggested that Leon terminate the deposition, while the transcript reflects that he

United States District Court
Northern District of California

suggested to Leon that he could loudly ask to return to his cell; Leon Mot. at 33:6–12). But because I am giving Fanaro the opportunity to put the questions to Leon, his attorney's fees and costs were not wasted.

## CONCLUSION

Vargas is ORDERED TO SHOW CAUSE why he should not be sanctioned for failing to appear at his deposition. He shall submit a response by April 19, 2021.

Fanaro shall submit a list of questions as explained above to Leon by April 19, 2021. Leon is ORDERED to state whether or not he invokes the Fifth Amendment privilege against self-incrimination in response to all of them. He shall respond no later than May 14, 2021. His failure to respond will be understood as invoking the privilege in response to all questions.

The motions are otherwise denied.

**IT IS SO ORDERED.**

Dated: March 30, 2021

William H. Orrick
United States District Judge